**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICK MARTIN, and individually on behalf all others similarly situated, | Case No. 2:24-CV-00326-MPK |
| Plaintiffs, | MAGISTRATE JUDGE MAUREEN P. KELLY |
| v. | |
| JLE INDUSTRIES, LLC, JLE EQUIPMENT LEASING, LLC, and EVAN POHASKI | |
| Defendants. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**I.     INTRODUCTION**

This class and collective action lawsuit against Defendants JLE Industries, LLC, JLE Equipment Leasing, LLC, and Evan Pohaski (collectively referred to as "Defendants" or "JLE") has been settled, subject to court approval and Plaintiff Rick Martin ("Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement Agreement. As discussed herein, the proposed settlement is fair and reasonable and warrants this Court's preliminary approval.

This lawsuit concerns JLE making  deductions from delivery drivers' wages which Plaintiff claims were in violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL"), and in some weeks, caused delivery drivers' pay to fall below minimum wage, in violation of the Pennsylvania Minimum Wage Act ("PMWA") and the Fair Labor Standards Act ("FLSA"), Plaintiff also  alleged violations of the  federal Truth-in-Leasing regulations. This case was originally filed on March 14, 2024. Dkt. 2. After an exchange of data and financial records for

1

Defendants, a mediation session with Judge Vanaskie, (retired Third Circuit judge) and extensive follow-up negotiations, Plaintiff and Defendants present the Settlement Agreement, attached hereto as Exhibit 1, to the Court for approval.

The Settlement includes a non-reversionary gross payment by JLE of $930,000.00 (the "Gross Settlement Amount"), inclusive of payments to participating class members, attorneys' fees and costs, settlement administration costs, and any service award to the Named Plaintiff that is approved by the Court. See Settlement Agreement ¶ 1. Every Class Member who does not submit a request for exclusion ("Participating Class Member") will receive a Settlement Award, based on the number of weeks he worked for JLE during the time period of March 14, 2021 to the date of preliminary approval. Id. Class Counsel believe that the negotiated Settlement Agreement provides a favorable result for the Plaintiff and the Class, with respect to their claims for unlawful deductions, minimum wage violations, and Truth-in-Leasing violations resulting from JLE's alleged misclassification of delivery drivers as independent contractors. Declaration of Harold Lichten ("Lichten Decl.") ¶¶ 9-10. Specifically, the numerous contested legal issued in this case, as well as an analysis of Defendants' financial documents, make clear that the instant settlement is a fair and reasonable resolution of the claims in this case. Id. ¶¶ 11-12.

Plaintiff respectfully submits that this Motion should be granted because the proposed Settlement Agreement satisfies all the criteria for preliminary approval under federal law and falls well within the range of reasonableness. Accordingly, Plaintiff requests that the Court issue an Order: (1) granting preliminary approval of the proposed Settlement Agreement as fair, reasonable, and adequate under Rule 23(e); (2) certifying, for settlement purposes only, a class of all individuals who, at any time between March 14, 2021 and the date of preliminary approval by the Court, worked as independent contractor truck drivers for JLE Industries, LLC, JLE Equipment

Leasing, LLC or their affiliates and/or worked pursuant to independent contractor truck driver agreements with JLE Industries, LLC, JLE Equipment Leasing, LLC or their affiliates and/or were parties to equipment leases with JLE Industries, LLC, JLE Equipment Leasing, LLC or their affiliates; (3) authorizing issuance of notice to the class pursuant to Rule 23 (e); (4) appointing Plaintiff Rick Martin as Representative; (5) appointing Sarah R. Schalman-Bergen, Harold Lichten, and Olena Savytska of Lichten & Liss-Riordan, P.C. as Counsel for the Class; (6) approving the plan of notice to the Settlement Class Members, including approving the Notice attached to the Settlement Agreement as Exhibit A; and (7) approving the proposed schedule and procedure for the final approval of this Settlement. Defendants do not oppose this Motion.

## II. PROCEDURAL HISTORY

Plaintiff Rick Martin filed this case on March 14, 2024, alleging violations of the FLSA, Pennsylvania wage laws, and the federal Truth-in-Leasing regulations. See Complaint, Dkt. 2. The Parties subsequently engaged in preliminary settlement discussions, and eventually agreed to participate in mediation. Lichten Decl. ¶ 8; Dkt. 25. A mediation was scheduled for July 24, 2024 with Judge Thomas Vanaskie. Id. In anticipation of the mediation, at Judge Vanaskie's direction, the Parties submitted mediation statements, and exchanged damages analyses, as well as initial demands and offers for settlement. Lichten Decl. ¶ 13.

Judge Vanaskie held a full-day mediation with the Parties on July 24, 2024 via Zoom. Lichten Decl. ¶ 8. Although the case did not resolve on that date, the Parties continued settlement discussions in the weeks that followed, and, on October 16, 2024 entered into a Memorandum of Understanding, which they subsequently developed into the Settlement Agreement now before the Court. Id. ¶ 8; Ex. 1.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  The Settlement Class

The Settlement Class in this case includes "[a]ll individuals who, at any time between March 14, 2021 and the date of preliminary approval by the Court, worked as independent contractor truck drivers for JLE Industries, LLC, JLE Equipment Leasing, LLC or their affiliates and/or worked pursuant to independent contractor truck driver agreements with JLE Industries, LLC, JLE Equipment Leasing, LLC or their affiliates and/or were parties to equipment leases with JLE Industries, LLC, JLE Equipment Leasing, LLC or their affiliates." Ex. 1 at ¶ 10(a). There is an estimated total of 529 Settlement Class Members. Id. Notice of the settlement will be provided to the above-defined Settlement Class in the form of the proposed Settlement Notice ("Notice") attached to the Settlement Agreement as Exhibit A by first class mail and email (where available). Id. at ¶ 7(a). Every Participating Class Member (*i.e.*, Settlement Class Member who does not submit a request for exclusion) will be paid a Settlement Award, calculated based on the number of weeks he worked for JLE. Id. at ¶ 1.

### B.  Maximum Gross Settlement Amount and Release of Claims

In addition to amounts for payments to Participating Class Members, the non-reversionary Gross Settlement Amount includes amounts to cover: (1) a service award to Named Plaintiff Rick Martin for his efforts in bringing and prosecuting this matter in the amount of $2,500.00; (2) the payment of attorneys' fees in the amount of up to 30% of the Gross Settlement Amount, or $279,000.00, which will compensate Class Counsel for all work performed in the litigation as of the date of the Settlement Agreement, plus all work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the

Action, and which is inclusive of the out-of-pocket costs incurred by Class Counsel, currently estimated at $ 3,368.27. Ex. 1 at ¶¶ 4(a), 5(a); Lichten Decl. ¶ 15. Class Counsel will file a Motion for Approval of Attorneys' Fees and Costs and for Final Approval of the Settlement prior to the Court's final fairness hearing.

Pursuant to the Settlement Agreement, Settlement Awards to Participating Class Members will be made from the Net Settlement Amount. Specifically, all Participating Class Members will receive a *pro rata* share of the Net Settlement Amount based on the total number of work weeks during which the Participating Class Member worked for JLE between March 14, 2021 and the date of preliminary approval. Ex. 1 at ¶ 1.  All Settlement Award determinations shall be based on Defendants' data for Settlement Class Members. Lichten Decl. ¶ 17. Settlement Awards shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. Ex. 1 at ¶ 6(b).

Defendants shall pay out the Gross Settlement amount in two equal installments of $465,000.00, the first of which will be paid on the later of: 60 days after final approval or July 28, 2025, and the second of which will be paid by September 30, 2025. Ex. 1 ¶ 3(a). Settlement Awards for each Participating Class Member will be mailed to them within 14 days of Class Counsel's receipt of each payment. Id. at ¶ 9(b). Settlement checks shall remain valid and negotiable for 60 days from the date of their issuance. Id. at ¶ 9(c). If, at the conclusion of each 60-day check void period, the proceeds remining from uncashed checks are greater than $5,000.00, the funds will be redistributed pro rata to class members who cash their settlement checks; if the proceeds are less than $5,000.00, the funds will paid to a *cy pres* organization approved by the parties and this Court. Id. at ¶ 9(d). There will be no reversion of any portion of the Gross Settlement Amount to

Defendants. <u>Id.</u> at ¶ 2(a).[1]

In exchange for the Settlement benefits, Named Plaintiff and all Participating Class Members will release any manner of legal or equitable action or cause of action, suits, claims, liabilities, damages, wages, payments, restitution, interest, penalties, attorneys' fees, costs and expenses of any kind or nature whatsoever, know or unknown, which the they now have, ever had, or shall later have against releases, arising out of or relating to or in connection with claims arising out of or relating to the contentions of the Plaintiff in this case that he and class members were misclassified as independent contractors rather than employees, that they did not receive minimum wage compensation in all workweeks, that they were subject to unlawful deductions, and/or any alleged breach of contract. <u>Id.</u> at ¶ 10(a). No releases shall be effective until the Effective Date of the Settlement Agreement. <u>Id.</u>

**C. Notice To Potential Settlement Class Members**

The Settlement Agreement provides what Plaintiff believes is the fairest and most practicable procedure for notifying Settlement Class Members of the terms of the Settlement Agreement and their respective rights and obligations under the Agreement – direct mail and electronic mail ("email"). <u>Id.</u> at ¶ 7(a). Under the terms of the Settlement Agreement, Defendants will provide Class Counsel with an electronic database containing, among other information, the names, last known addresses, last known telephone numbers (if any), last known email addresses, and social security numbers for Settlement Class Members. <u>Id.</u> In order to provide the best notice

---

[1] However, in the event that (a) 2 or more Class Members opt out or exclude themselves from the settlement; or (b) any Class Member who has worked more than 4 weeks during between March 14, 2021 and the date of final approval opts out or excludes himself/herself from the settlement, then Defendants, at their sole discretion, may either: (x) void this agreement; (y) elect to receive a reversion of an amount of the Settlement Fund equal to amount such Class Members would have received from the settlement had they not opted out; (z) if no payment has been made into the Settlement Fund, Defendants may apply a pro rated reduction of amounts payable equal to amount such Class Members would have received from the settlement had they not opted out. Ex. 1 at ¶ 7(j).

practicable, Class Counsel will take reasonable efforts to identify current addresses via public and proprietary systems. Id.; Lichten Decl. ¶ 15.

Class Counsel shall mail and email (where email addresses are available) an agreed upon and Court-approved Notice. Ex. 1 at ¶ 7(a). Any Notices returned to Class Counsel with a forwarding address shall be re-mailed by Class Counsel. Id. If any Notice is returned to Class Counsel without a forwarding address, Class Counsel shall undertake reasonable efforts to search for the correct address and shall promptly re-mail the Settlement Notice to any newly found addresses. Id. Settlement Class Members shall have sixty-six calendar days from date of preliminary approval to object to or opt-out of the Settlement Id. at ¶¶ 7(b)-(c).

## IV. ARGUMENT

### A.  The Settlement Meets the Standard for Preliminary Approval under Rule 23(e)

Plaintiff seeks preliminary approval of the settlement pursuant to Fed. R. Civ. P. 23(e). There is an "overriding public interest in settling class action litigation." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Settlement is particularly favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." Id. (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995)). Rule 23(e) requires judicial approval for any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e) outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. See, e.g., Manual for Complex Litigation (Third) § 30.41.

"The preliminary determination establishes an initial presumption of fairness." In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d at 784. A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's-length;

(2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[2] Id. at 785 (citing 2 Newberg on Class Actions § 11.41 at 11–88 (3d ed.1992)); Manual for Complex Litigation (Third) § 30.42, at 238 (1997); see also Klingensmith v. BP Prods. N. Amer., Inc., 2008 WL 4360965, at *5 (W.D. Pa. Sept. 24, 2008) (holding "the settlement merits preliminary approval [as the settlement was] reached as a result of arm's-length negotiation between experienced counsel aided by an experienced mediator."); In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").[3] As set forth below, the proposed Settlement in this case is entitled to an initial presumption of fairness, and it falls well within the range of possible recovery for approval.  Preliminary approval is warranted.

### 1.  The Settlement Agreement Is Entitled to an Initial Presumption of Fairness

The proposed settlement agreement in this case easily meets the relevant factors to establish the presumption of fairness required at the preliminary approval stage.

First, the settlement was the product of arm's length negotiations, including a full-day mediation with Judge Thomas Vanaskie, a retired judge who has significant experience with wage and hour cases, and extensive informal settlement discussions, both prior to and after the mediation. Lichten Decl. ¶ 8. Courts have found that, where settlement of a case was aided by mediator, it is compelling evidence that vigorous and arm's-length negotiations occurred.  See,

---

[2] Given that notice has not yet been issued, this fourth factor is not applicable at the preliminary approval stage.

[3] These factors are distinct from the nine-factor test adopted by the Third Circuit to ultimately approve settlements as fair, reasonable, and adequate under Rule 23(e). Checchia v. Bank of America, N.A., 2023 WL 2051147, at *2 n.1 (E.D. Pa. Feb. 6, 2023) (citing Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975)). "At the preliminary approval stage ... the Court need not address these factors, as the standard for preliminary approval is far less demanding." Id. (citation omitted); see also In re Gen. Motors Corp., 55 F.3d at 785 (holding that the "preliminary determination establishes an initial presumption of fairness").

e.g., Checchia, 2023 WL 2051147, at *3 (citing cases); see also Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001) (It is well-established that, in determining whether a proposed settlement should be preliminarily approved, courts may consider whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations.") (quoting Manual for Complex Litigation (Second) §30.44).

Second, there was sufficient discovery performed to put the Parties on an equal footing to engage in informed settlement discussions. Prior to the mediation, Defendants provided Class Counsel with data regarding the number of class members and their workweeks, and Class Counsel used that data, along with Plaintiffs' pay statements, to prepare a damages model. Lichten Decl. ¶ 13. Defendants also provided Class Counsel with detailed financial documents, which made clear to Plaintiffs' Counsel that Defendants would be unable to withstand a judgment for a greater amount, and informed Class Counsel's decision to enter into the Settlement Agreement. Id. ¶ 12. The Gross Settlement Amount is based on an intensive review of the facts and law. Id. ¶ 13.

Third, the proponents of the settlement are experienced class action class action litigators who are well versed in class and collective action wage and hour law. Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. See, e.g., Reed v. Gen. Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried"); In re Rent-Way Sec. Litig., 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"). As set forth in the accompanying declaration, lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class

action wage-and-hour cases and is a recognized expert in labor and employment. See Lichten Decl. ¶¶ 2, 4-7. Class counsel are also uniquely experienced in wage and hour class action litigation on behalf of delivery drivers like Plaintiffs. Attorney Lichten has successfully represented couriers and delivery drivers in a number of wage-and-hour class actions.[4] See, e.g., Portillo v. Nat'l Freight, Inc., 606 F. Supp. 3d 72 (D.N.J. 2022) (holding on summary judgment that defendants misclassified a class of delivery drivers under the NJWPL's ABC test); Carrow v. FedEx Ground Package System, Inc., No. 16-3026 (D.N.J.), Dkt 161 (approving class action settlement on behalf of FedEx drivers who asserted claims under New Jersey wage laws); DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 405 (D. Mass. 2017) (granting class certification in truck driver misclassification case and stating of Attorney Lichten: "plaintiffs' attorneys are highly experienced in class-action employment litigation and specifically in Wage Act misclassification claims"); Badia v. HomeDeliveryLink, Inc., 2015 WL 5666077, at *8 (D.N.J. Sept. 25, 2015). Given the circumstances as described above, a presumption of fairness should attach to the settlement, and the Court should grant preliminary approval of the Settlement.

**2. The Terms of the Proposed Settlement Are Fair and Reasonable When Considering the Uncertainty of Continuing To Litigate This Matter**

The terms of the settlement in this case fall within the range of reasonableness, such that the proposed Settlement meets the standard for preliminary approval under Rule 23(e). See Copley

---

[4] See also Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (representing class of misclassified delivery drivers); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013) (representing class of misclassified cable installers seeking unpaid wages); Hager v. OmniCare, Inc., No. 5:19-cv-00484, Dkt. 124 (S.D.W.V. Nov. 15, 2021); Taveras v. XPO Logistics, Inc., No. 3:15-cv-01550, Dkt. 123 (D. Conn. Aug. 11, 2017); Brandon v. 3PD, Inc., No. 13-3745, Dkt. 151 (N.D. Ill. Jan. 26, 2016); Martins v. 3PD, Inc., 2014 WL 1271761 (D. Mass. Mar. 27, 2014); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass. 2009) (landmark decision of the Massachusetts Supreme Judicial Court on independent contractor misclassification); Oliveira v. Advanced Delivery Systems, Inc., C.A. No. 09-1311 (Mass. Super. Ct. 2009); Sherman v. American Eagle Express, Inc., d/b/a AEX Group, C.A. No. 2:09-00575-JS; (E.D. Pa. 2009); Fucci v. Eastern Connection Operating, Inc., C.A. No. 2008-2659 (Mass. Super. Ct. 2008); Chambers v. RDI Logistics, 476 Mass. 95 (2016).

v. Evolution Well Services Operating, LLC, 2023 WL 1878581, *4 (W.D. Pa. Feb. 10, 2023) (citing In re NFL Players' Concussion Injury Litig, 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004) ("MCL"))).

The Gross Settlement Amount provides Settlement Class Members with certain payment of wages without the further delay and uncertainty that would have resulted if the case had been litigated through conditional and class certification, dispositive motions, trial and subsequent appeal. The Parties in this case disagree on numerous legal and factual issues that would have impacted the case moving forward, including whether Plaintiff and class and collective members were properly classified as independent contractors, and whether the deductions taken from their pay were permissible under Pennsylvania law. Lichten Decl. ¶ 11. Specifically, Defendants have taken the position that many of the deductions taken from Plaintiff's and Class Members' pay were authorized by their agreements with Defendants, and, as a result, did not violate Pennsylvania law. Id. Moreover, Class Counsel had reason to believe, based on a detailed review of financial documents provided by Defendants, that, given Defendants' financial condition, further litigation would result in a significant risk of a reduced recovery to Class Members, or no recovery at all. Id. ¶ 12.

Ultimately, the Settlement that the Parties reached with the assistance of Judge Vanaskie reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiff would face if the case proceeded in litigation. Lichten Decl. ¶ 9.  The Gross Settlement Amount represents approximately 20% percent of Defendants' total potential exposure for alleged unpaid wages owed. Id. at ¶ 18.  This range of recovery is higher than other settlements of wage claims approved by courts in this District and falls within the range of reasonableness, particularly in light of Defendants' financial condition.  See, e.g.,

Copley, 2023 WL 1878581, *4 (preliminarily approving settlement compensating the class for approximately 80% of unpaid wages sought as reasonable, and noting that settlements have been approved where the recovery represents 20%, 39% and 62.5% of unpaid wages). Moreover, the settlement treats Settlement Class Members equitably, by allocating settlement shares based on the respective number of workweeks that each worked during the relevant time period of the lockout.

This is a favorable outcome for the Settlement Class Members, especially considering the risks of continued litigation, including the risk of non-payment. Where, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the class members, it is an indication that the proposed settlement is fair, reasonable, and adequate. See Craig v. Rite Aid Corp., 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").[5] In the instant case, the complexity and expense of litigation is clearly outweighed by the efficiency and financial relief presented by the Settlement Agreement.

Moreover, the 30% fee requested by Class Counsel, which is inclusive of all costs incurred to date, as well as any costs remining to be incurred, is "well within the range of acceptable requests in this district court and has been approved in many other wage and hour collective/class matters." See Copley, 2023 WL 1878581, at *5 (granting preliminary approval and noting that one-third of the settlement fund is a "benchmark" for fees in this District); Lichten Decl. ¶ 20.

---

[5] See also In re Certainteed Fiber Cement Siding Litig., 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); Deitz v. Budget Renovations & Roofing, Inc., 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

In addition, the proposed $2,500.00 service award to Plaintiff Martin does not otherwise impact the Court's preliminary approval of the settlement. Plaintiff Martin took a significant risk in coming forward to bring this case.[6] He provided extensive documents, and assisted Class Counsel in developing the facts and legal theories in this case, resulting in the Settlement now before the Court. Lichten Decl. ¶ 16. Plaintiff also attended and was available by telephone during the mediation session and approved the settlement. Id. The requested service award is reasonable, consistent with similar awards in similar cases, and does not raise any grounds for questioning the reasonableness of the settlement at this stage. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted).

In summary, the proposed Settlement Agreement is the product of careful factual and legal research and arm's-length negotiations between the Parties. There are no obvious deficiencies in the terms of the settlement, and the Court should grant preliminary approval so that notice can be provided to the class members.

### B.  The Settlement is Fair and Reasonable and Merits Approval under the FLSA

The standard for approval of an FLSA collective action in the Third Circuit simply requires that a compromise reached is a "fair and reasonable" resolution of a *bona fide* dispute and furthers the purpose of the FLSA. See Brumley v. Camin Cargo Control, Inc., 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (citing Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1354 (11th Cir. 1982)). The proposed Settlement meets this standard.

---

[6] Plaintiff took the risk to step forward on behalf of his fellow workers, knowing that his name would be a on a public docket available through an internet search, and knowing that prospective employers might take his participation in such a lawsuit into consideration when making hiring decisions.  Lichten Decl. ¶ 16.

### 1.  The Settlement Resolves a *Bona Fide* Dispute and is Fair and Reasonable

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1355. "In essence, for a *bona fide* dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." Ogunlana v. Atl. Diagnostic Lab'ys LLC, 2020 WL 1531846, at *3 (E.D. Pa. Mar. 31, 2020) (citation and quotation marks omitted). Relevant here, "a dispute concerning overtime pay owed to class members is precisely the type of dispute the FLSA is designed to address." Id. (citation and quotation marks omitted).

Here, Plaintiff has asserted, on behalf of himself and other drivers, minimum wage claims under the FLSA. Dkt. 2 ¶ 3. Specifically, Plaintiff has argued that, due to the deductions taken by Defendants from his pay, there were certain weeks in which his and other class members' compensation fell below minimum wage. Id. This claim is a relatively small component of Plaintiffs' and class members' overall damage in this case, and the Parties disagreed on numerous legal and factual issues with respect to these claims, including, but not limited to, whether Plaintiff and class members were misclassified as independent contractors; whether Defendants would be able to meet their burden of demonstrating good faith, such that it would avoid the imposition of liquidated damages; whether Plaintiff could obtain and maintain a collective action status of the action; and whether the Parties would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages. Lichten Decl. ¶ 11. Accordingly, a *bona fide* dispute exists. Ultimately, the Settlement Agreement represents a compromised resolution on these

issues, accounts for the risks of litigation, and provides certain and meaningful payment for the workers in this case in exchange for their minimum wage claims.[7]

As described above, the Settlement was the result of an extensive factual investigation and contested, arm's-length negotiations by counsel with extensive experience litigating these matters. Class Counsel believe that the negotiated Settlement provides a favorable outcome for the Settlement Class Members, given the risks of continued litigation, as set out in the preceding section. Lichten Decl. ¶¶ 8-14.[8]

### 2. The Proposed Settlement Furthers the Purpose of the FLSA

Generally speaking, settlements further the FLSA's implementation where they lack "overly burdensome confidentiality agreements, overbroad release language, or sealed filings." Travis v. Asociacion Puertorriquenos en Marcha, Inc., 2020 WL 4059715, at *6 (E.D. Pa. Jul. 20, 2020) (internal quotations omitted). The instant settlement avoids such pitfalls. The release is narrowly tailored to the claims at issue and there are no confidentiality or non-disparagement clauses, or other terms that Courts have found problematic in a collective action settlement. Indeed, the Settlement furthers the purposes of the FLSA by providing Plaintiff and Settlement Collective Members with substantial recovery for their unpaid minimum wage compensation, that, because

---

[7] The FLSA minimum wage claims are a relatively small component of the overall damages in this case, and the damages associated with these claims are subsumed by (1) Plaintiff's and Class Members' minimum wage claims under the PMWA and (2) deductions claims under Pennsylvania law.

[8] The Settlement Agreement provides that Settlement Class Members who do not submit a request for exclusion will be deemed, upon the Effective Date, to release their FLSA claims. Ex. 1 ¶ 7(g). The Class Notice will inform the Settlement Class Members of this release. Id.; see also Ex. A. This release provision is consistent with those approved with other courts in this District. See Then v. Great Arrow Builders, LLC, 2022 WL 562807, at *4 (W.D. Pa. Feb. 23, 2022) ("the Court concludes that the parties' release is acceptable, particularly because the proposed notice appears to fully inform settlement class members of what they must do to opt-out of the settlement and preserve any FLSA claim they might have with respect to the Site Allowance."); see also Lunemann v. Kooma III LLC, 2024 WL 2133803, at *2 (E.D. Pa. May 13, 2024) (same). Nevertheless, in the event this provision is not approved by the Court, the Parties shall use their best efforts to re-negotiate the settlement agreement. Ex. 1 at ¶ 7(g), n. 1.

of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover.[9] Accordingly, the Settlement furthers the purposes of the FLSA.

### C.  Certification of the Class Under Fed. R. Civ. P. 23(e) is Appropriate

Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class.[10] In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). See Carrow v. FedEx Ground Package Sys., Inc., 2019 WL 7184548, at *4 (D.N.J. Dec. 26, 2019). A case may be certified as a class action under Rule 23 when:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. See, e.g., Portillo v. National Freight, Inc., 336 F.R.D. 85, 92 (D.N.J. 2020). Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members,"

---

[9] See 29 U.S.C. § 202 (congressional finding and declaration of policy); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency....").

[10] Plaintiff will move for final certification of the FLSA collective as part of his Motion for Final Approval. See Lunemann, 2024 WL 2133803, at *2 ("The Court preserves any discussion of the collective certification until the final approval stage, when we will consider whether the members of the collective are similarly situated under the *Zavala* factors.").

and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively. As discussed below, the Court should preliminarily find that all of the requirements for class certification are satisfied for settlement purposes.[11] The Parties have stipulated that, for settlement purposes only, class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) are met with respect to the Settlement Class.

### 1. The Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class size only need be large enough that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). "In the Third Circuit, a court will presume that numerosity is met if 'the potential number of plaintiffs exceeds 40." *Portillo*, 336 F.R.D. at 92 (internal quotations omitted). The numerosity requirement is satisfied because there are more than 500 Settlement Class Members. Lichten Decl. ¶ 17.

### 2. The Settlement Class Seeks Resolution of Common Questions

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation marks omitted).

Plaintiff's misclassification and wage claims in this case are well-suited for class wide resolution. Plaintiff maintains that all of the potential class members suffered the same economic

---

[11] The Manual for Complex Litigation (the "Manual") notes the propriety of certifying a class solely for purposes of settlement. MANUAL FOR COMPLEX LITIGATION § 21.132 (4th ed. 2013).

injuries based on Defendants' alleged violations of Pennsylvania wage laws and the Truth-in-Leasing regulations.

### 3.   The Claims of the Named Plaintiff are Typical of the Settlement Class

The typicality requirement of Fed R. Civ. P. 23(a)(3) is satisfied for purposes of preliminarily approving the settlement, because Plaintiffs possesses the same interest and suffered the same alleged injury as the absent class members. See Portillo, 336 F.R.D. at 92 (holding that in order to demonstrate typicality, "(1) the claims of the class representative must be generally the same as those of the class . . . (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class") (internal quotations omitted). Plaintiff's claims arising under Pennsylvania wage laws and the Truth-in-Leasing regulations are typical of the claims of the Settlement Class. Plaintiff is not subject to a defense that is inapplicable to many members of the class, nor are his interests adverse to the class.

### 4.   Class Counsel and Plaintiff Are Adequate Representatives of the Settlement Class

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), Plaintiff must show: 1) that he has common interests with unnamed class members and 2) that he or she will vigorously prosecute the interests of the class through qualified counsel. See Portillo, 336 F.R.D. at 93. The adequacy of representation requirement is met here because Plaintiff has the same interests as the Settlement Class Members. Plaintiff has and will continue to aggressively and competently assert the interests of the Settlement Class. As identified *supra*, Class Counsel are skilled and experienced in employment class action litigation, including misclassification cases brought on behalf of delivery drivers. Lichten Decl. ¶¶ 2, 4-7.

**5.  The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)**

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." For the reasons discussed above, the Settlement Class satisfies the predominance requirement for settlement purposes. In addition, allowing the Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Accordingly, Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for settlement purposes only.

**D.  The Proposed Notice Provides Adequate Notice To The Participating Class Members and Satisfies Due Process**

The settlement proposes a plan of notice that satisfies due process and which should be approved by the Court. The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Where, as here, the class is certified under Rule 23(b)(3), "the court must direct to class

members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, as described *supra*, the proposed Notice and manner of distribution negotiated and agreed upon by the Parties is "the best notice practicable," as required under the Federal Rules. All Class Members have been identified in a class list, and the Notice will be mailed directly to the last known address of each member (and those addresses that Clas Counsel are able to find using reasonable investigatory methods). The Notice will also be emailed to Settlement Class Members whose email addresses are known.

The proposed Notice, which is attached to the Settlement Agreement as Exhibit A, is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement Agreement, the monetary awards that the Settlement will provide to Class Members, including the minimum amount each will be entitled to receive, the allocation formula, the scope of the release, the request for attorneys' fees and costs, and the procedures and deadlines for making a claim for a settlement award, opting out of the Settlement or submitting objections. *See* Settlement Agreement, Ex. A. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class or collective notice disseminated under authority of the Court, and should be approved.

### E.  Proposed Settlement Implementation Schedule

The Settlement Agreement contains a proposed schedule for notice and final approval of the Settlement Agreement. The proposed schedule, which Plaintiff respectfully requests that this Court approve, is as follows:

| Defendant to send CAFA Notice | Within 14 calendar days after submission of the Settlement Agreement to the Court |
|---|---|

| Defendant Provide Settlement Class List | Within 7 calendar days after the Court's Preliminary Approval Order |
| Notice Sent | Within 7 calendar days after receiving the Class List |
| Deadline to Postmark Objections or Requests for Exclusion ("Objection and Exclusion Deadline") | 66 calendar days after the Court's Preliminary Approval Order |
| Plaintiff's Motion for Final Approval | 10 days prior to Final Approval Hearing. |
| Final Approval Hearing | At the Court's convenience, scheduled no earlier than approximately one hundred (100) days after the Court's Preliminary Approval Order. |

## V.    CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant this Unopposed Motion for Preliminary Approval, and sign the accompanying proposed preliminary approval order.

Dated: December 30, 2024

Respectfully Submitted,

**RICK MARTIN,** individually and on behalf of all others similarly situated,

*Plaintiff*,

By his attorneys,

/s/Olena Savytska

Harold L. Lichten (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Sarah Schalman-Bergen
(PA Bar ID 206211)
Lichten & Liss-Riordan, P.C.

729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (267) 256-9973
ssb@llrlaw.com